NATALIE K. WIGHT, OSB # 035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00124-HZ |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **DANIEL GRAY KAMARA BAKER,** | **Sentencing: April 26, 2024** |
| **Defendant.** | |

The government asks the Court to impose a guideline sentence of credit for time served, to be followed by a three-year term of supervised release.

**A.     Summary of Proceedings.**

On November 2, 2023, defendant pled guilty to Count 1 of the Indictment charging him with Distribution of Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). The maximum sentence the Court may impose is a term of 20 years' imprisonment, a fine of $1,000,000, and at least three years of supervised release. There is also a $100 fee assessment.

///

**Government's Sentencing Memorandum**                                                                                         **Page 1**

A Presentence Report (PSR) has been completed. Sentencing is currently set for April 26, 2024. Defendant's case originated from a fatal drug overdose investigation. On November 29, 2020, Salem police officers and Task Force Officers assigned to the Drug Enforcement Administration (DEA) responded to a fatal drug overdose. PSR ¶ 18. Responding officers learned that the victim and his girlfriend, both poly-substance users, had ordered counterfeit M30 pills and counterfeit Xanax bars from an individual, later identified as defendant. According to the girlfriend, defendant delivered the drugs and she and the victim subsequently consumed some of the counterfeit Xanax bars they had purchased from the defendant. *Id.* Sometime during the night of November 29, 2020, both of them got sick and the victim tragically overdosed on fentanyl and passed away. *Id.* The cause of death was determined to be fentanyl intoxication. PSR ¶ 19. From the scene, investigators found approximately 76 counterfeit Xanax bars and 14 counterfeit M30 pills. *Id.*

On November 30, 2020, investigators re-ordered additional counterfeit Xanax bars and M30 pills from defendant and asked to have them delivered to Salem, Oregon, which he agreed to do. PSR ¶ 20. On November 30, 2020, when defendant showed up to complete the deal he was arrested. *Id.* Inside his car, investigators found approximately 131 counterfeit Xanax bars, but no counterfeit M30 pills. *Id.* Defendant was arrested and interviewed. *Id.* During his interview defendant admitted that he sold Xanax and M30 pills. PSR ¶ 21. He also gave investigators consent to search his apartment in Vancouver, Washington. PSR ¶ 22. Inside his apartment investigators found additional counterfeit Xanax bars and some fentanyl residue. PSR ¶ 23.

///

Real Xanax bars are made with Alprazolam, a Schedule IV controlled substance, and it is frequently prescribed to manage panic and anxiety disorders. Here, the counterfeit Xanax bars being sold by defendant contained Flubromazolam and Flualprazolam, both Schedule I controlled substances. Flubromazolam and Flualprazolam are triazolobenzodiazepine, which are benzodiazepine derivatives. The counterfeit M30 pills were manufactured with fentanyl, a Schedule II controlled substance.

Defendant's relevant conduct, pursuant to U.S.S.G. §§ 1B1.3 and 2D1.1(a), includes approximately 479 counterfeit Xanax tablets containing Flubromazolam and/or Flualprazolam, Schedule I controlled substances, as well as approximately 20 counterfeit M30 pills manufactured with fentanyl, a Schedule II controlled substance weighing approximately 2 grams. Plea Agreement at 8.

At this point, the government is unable to prove that the fentanyl defendant sold was the cause of the victim's death and we understand that the PSR will be amended to reflect that. Defense counsel, the U.S. Probation Office, and the Court were also informed of this.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)(quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

///

Based upon the amount of fentanyl, Flubromazolam, and Flualprazolam defendant sold and possessed with the intent to sell his initial Base Offense Level starts at 12, pursuant to U.S.S.G. § 1B1.3 and 2D1.1(a).  PSR ¶ 29; Plea Agreement ¶ 8.  This Base Offense Level is not in dispute.  Defendant is "safety valve" eligible, pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 2D1.1(b)(18), and thus qualifies for a two-level downward variance in his Sentencing Guidelines range.  PSR ¶ 30 (Amended PSR).  Because defendant also qualifies as a "Zero-Point Offender," pursuant to U.S.S.G. § 4C1.1, his offense level should be reduced by an additional two-levels.  PSR ¶ 35 (Amended PSR).  Based upon defendant's Acceptance of Responsibility his offense level should be decreased by an additional two levels, pursuant to U.S.S.G. § 3E1.1.  PSR ¶¶ 36.

Because the government is unable to prove that the fentanyl defendant sold was the cause of the victim's death, the government and U.S. Probation Office believe defendant's final adjusted Offense Level for sentencing purposes is 6.  Should the Court agree with the initial Sentencing Guideline Calculations, prior to any other adjustments, with an adjusted Offense Level of 6 and a Criminal History Category of I, defendant's suggested sentencing range is 0 to 6 months' imprisonment.  Defendant has already served more than 6 months in pretrial detention.

**C.     Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), the government asks the Court to sentence defendant to credit for time served to be followed by three years of supervised release.  The selling of counterfeit pills, whether counterfeit Xanax or counterfeit M30 pills, is incredibly destructive to the community.  Fentanyl in particular has devastated Oregon.

> Fentanyl and methamphetamine are the most significant drug threats to Oregon and Idaho.  Oregon-Idaho HIDTA (High Intensity Drug Trafficking Area) Information Sharing and Analytical Coordination Center (ISACC) predicts with confidence that fentanyl and

>methamphetamine will continue to be the most significant drug threats forward-looking into 2024. Fatal and non-fatal overdoses related to both substances have continued to increase over the past several years, which includes actual and presumptive results for 2022. All Oregon-Idaho HIDTA enforcement initiatives reported fentanyl and methamphetamine as their primary drug threats based on availability, impact on caseload, community livability, and associated crimes.

OREGON-IDAHO HIDTA 2024 THREAT ASSESSMENT, June 2023, at 11.

Defendant's crime is serious. Although it cannot be proven that defendant was the source of the fentanyl that resulted in the victim's death, defendant nevertheless was profiting by feeding other peoples' addictions and this case highlights the inherent dangers presented by the illegal distribution and use of fentanyl. Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a guideline sentence is reasonable. We ask the Court to impose it, to be followed by a three-year term of supervised release.

///

///

///

There are no charges to be dismissed.  There is an appeal waiver.  There are no forfeiture issues.

Dated: April 18, 2024.                                  Respectfully submitted,

                                                        NATALIE K. WIGHT
                                                        United States Attorney

                                                        /s/ *Scott Kerin*
                                                        SCOTT M. KERIN, OSB # 965128
                                                        Assistant United States Attorney